UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID SCHWAB, JERRY SCHWAB, DONNA
SCHWAB,

                    Plaintiffs,

vs.                              Case No.  2:11-cv-638-FtM-29DNF

MARY LYNN HITES, also known as Mary
Lynn Schwab,

                    Defendant.
_____

**OPINION AND ORDER**

       This matter comes before the Court on a Motion to Dismiss
Amended Complaint for Lack of Personal Jurisdiction (Doc. #33)
filed on January 20, 2012, by defendant Mary Lynn Hites, also known
as Mary Lynn Schwab (Mary Lynn or defendant).  Plaintiffs David
Schwab (David), Jerry Schwab (Jerry), and Donna Schwab
(Donna)(collectively, plaintiffs) filed a response on February 3,
2012. (Doc. #35.)  Defendant filed a reply in support on February
17, 2012. (Doc. #43.)  For the reasons set forth below, the motion
to dismiss is granted.[1]

_____

       [1]Also before the Court is defendant's Motion to Strike
Portions of Affidavit of David Schwab (Doc. #39) filed on February
13, 2012, to which defendants filed a response (Doc. #41) on
February 15, 2012.  As the Court can resolve the motion to dismiss
without the Affidavit of David Schwab, the motion to strike is
denied as moot.

**I.**

Plaintiffs Jerry and Donna are husband and wife and parents to plaintiff David and defendant Mary Lynn. The parties were stock owners in a family business, Schwab Industries, Inc. (Schwab Industries), which conducted business through various subsidiaries in Ohio and Florida. Specifically, Jerry owned 46%, David owned 27%, Donna owned 6%, and Mary Lynn owned 20% of Schwab Industries.[2] On February 28, 2010, Schwab Industries filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code. On May 28, 2010, an order was entered in the Bankruptcy Case that authorized the sale of substantially all of the assets of Schwab Industries.

Pursuant to a sale under 11 U.S.C. § 363 of the United States Bankruptcy Code, Oldcastle Materials, Inc., a Delaware corporation with offices in Florida (Oldcastle), purchased certain Schwab Industries assets. To compliment its acquisition of assets, Oldcastle offered to buy, and Jerry, Donna, and David agreed to sell, their personal goodwill to Oldcastle. The Complaint alleges that although Mary Lynn had no goodwill to offer, she was a "seller" under the goodwill agreement. The Personal Goodwill Purchase Agreement (Goodwill Agreement) required David to enter

---

[2]The parties differ on Mary Lynn's exact percentage of ownership (20%, 20.6% or 20.7%). (See e.g. Doc. #33-1, ¶3; Doc. #35, p. 3.) Because the Court must accept all well pleaded allegations as true, it adopts the percentage of ownership pled in the Amended Complaint.

into an Executive Employment Agreement, David and Donna to enter into a Consulting Agreement, and Jerry, David, Donna, and Mary Lynn to enter into a Non-Compete Agreement. The Personal Goodwill Agreement specified a purchase price of $1,000,000.00 (1 million) to be paid in annual installments of $200,000 per year, for five years. The Non-Compete Agreement specified a purchase price of $2,762,500 which was divided as follows: $300,000 in the first, second, and third years; $662,500 in year four; and $1,800,000 in year five. Neither agreement specifies how the payments would be allocated among the sellers.[3]

The Amended Complaint alleges that at the time Jerry, Donna, David, and Mary Lynn entered into the Personal Goodwill Agreement and the Non-Compete Agreement (collectively, the Oldcastle Contracts), plaintiffs and defendants did not have a mutual agreement as to how the monies earned on the contracts would be allocated amongst themselves. However, because the parties determined that it was imperative that the transaction with Oldcastle be consummated immediately, the parties agreed to determine the proper allocation of the proceeds in accordance with the relative personal goodwill and value of the non-compete

---

[3]In addition to the Goodwill Agreement and the Non-Compete Agreements, Oldcastle offered to purchase trucks owned individually by David and Jerry and by Jastin, Inc., an Ohio company owned by Mary Lynn that were leased to Schwab Industries and utilized by the company in its business, including business in Florida. A separate contract was entered into with respect to these vehicles.

agreement of the parties, equity, and fairness after the Oldcastle contracts were consummated but before the first payment was due.[4]

David, Jerry, Donna, and Mary Lynn appointed Ronald Manse, CPA as the "Seller's Agent" to receive the payments due under the two contracts in escrow. On or about June 23, 2011, Manse received the first payment under both the Personal Goodwill Agreement and the Non-Compete Agreement. The parties still had no agreement as to the allocation of the proceeds. On or about July 7, 2011, Mary Lynn, through counsel and via e-mail, directed Manse to refrain from making any distributions to the parties unless she received 25% of the funds. Manse distributed the first payment in four equal shares without specific authorization from David, Jerry, or Donna. David, Jerry, and Donna demanded that Mary Lynn return the proceeds to them and defendant refused.

As a result, plaintiffs commenced this action in the Circuit Court for the Twentieth Judicial Circuit of the State of Florida, in and for Lee County, Civil Division, entitled <u>David Schwab, Plaintiff v. Mary Lynn Hites</u>, case number 11-CA-003276. Mary Lynn removed the action to this Court on November 7, 2011 (Doc. #1). On January 9, 2012, the defendants filed an Amended Complaint (Doc. #29) asserting the following four state law causes of action:

---

[4]The Amended Complaint further alleges that "it was and continues to be the position of David, Jerry, and Donna that the substantial majority of the Payments should be allocated to David and that *no part* of the Payments should be allocated to Mary Lynn." (Doc. #29, ¶33)(emphasis in original).

declaratory judgment (Count I); breach of fiduciary duties (Count II), quantum meruit (Count III), and unjust enrichment (Count IV).

Defendant filed the subject motion to dismiss seeking to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) because she is a resident of Ohio and this Court does not have either specific or general personal jurisdiction over her. Plaintiffs argue to the contrary.

## II.

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999); see also Sinchem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). The parties do not dispute subject-matter jurisdiction and the claims are clearly within the diversity jurisdiction of the Court pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.00.

Personal jurisdiction is a restriction on judicial power as a matter of individual liberty, and "a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584  (1999). Unless

waived or forfeited[5], personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." Id. at 584 (citation and internal quotation marks omitted).

The existence of personal jurisdiction is a question of law. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1242, 1257 (11th Cir. 2010); Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009). "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). A prima facie case is established if plaintiff alleges enough facts to withstand a motion for directed verdict or judgment as a matter of law. PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 810 (11th Cir. 2010); SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). If defendant challenges jurisdiction by submitting affidavit evidence making a specific

---

[5]Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982).

factual denial based on personal knowledge, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Mazer, 556 F.3d at 1274. Plaintiff bears the ultimate burden of establishing that personal jurisdiction is present. Oldfield, 558 F.3d 1217. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." PVC Windoors, 598 F.3d at 810.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Diamond Crystal Brands, 593 F.3d at 1257-58 (internal citations and quotation marks omitted). The Court must determine the first step before proceeding to the second. PVC Windoors, 598 F.3d at 807-08.

The reach of the Florida long arm statute is a question of Florida law. Mazer, 556 F.3d at 1274. "A Florida court conducts

a two-step inquiry when determining whether jurisdiction under Florida's long-arm statute is proper in a given case.  Initially, it must determine whether the complaint alleges jurisdictional facts sufficient to invoke the statute.  If so, the court must then examine whether the defendant has sufficient 'minimum contacts' with Florida in order to satisfy due process requirements." Canale v. Rubin, 20 So. 3d 463, 465 (Fla. 2d DCA 2009) (citing Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000)).  The due process analysis itself involves a two-part inquiry in which the Court first considers whether defendant engaged in minimum contacts with the state of Florida, then considers whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice.  Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir. 1990).

## III.

### A.  General Jurisdiction

Florida's long-arm statute provides in part: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).  "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause

of the Fourteenth Amendment." <u>Fraser v. Smith</u>, 594 F.3d 842, 846 (11th Cir. 2010). "In order to establish that [defendant] was engaged in substantial and not isolated activity in Florida, the activities of [defendant] must be considered collectively and show a general course of business activity in the State for pecuniary benefit." <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F.3d 1357, 1361 (11th Cir. 2006) (quoting <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 627 (11th Cir. 1996)).

Plaintiffs make no argument that the defendant falls under this general jurisdiction provision of Florida's long-arm statute and the Court finds no basis in the Complaint to conclude that Mary Lynn was engaged in substantial activity in the state. Therefore, Mary Lynn is beyond the reach of the general personal jurisdiction provision of the Florida Long-Arm Statute.

## B.  Specific Jurisdiction

The Complaint alleges that the Court has specific personal jurisdiction over Mary Lynn because: (1) she operated, conducted, engaged in, or carried on a business venture, or had an office or agency in the state; and/or (2) committed a tortious act in Florida by breaching fiduciary duties in the state of Florida.[6]  (Doc. #29, ¶6.)

---

[6]The Complaint also alleges that personal jurisdiction is appropriate under Fla. Stat. §§ 685.101 and 685.102, which is discussed in more detail, below.

The specific jurisdiction provision of the Florida long-arm statute provides that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state, or having an office or agency in the state . . . . [or] (b) [c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1). Specific jurisdiction refers to "jurisdiction over causes of action that arise from or are related to the party's actions within the forum." PVC Windoors, 598 F.3d at 808. Florida law requires, however, "before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." Id. (citations and internal quotation marks omitted). The Court will therefore first examine the sufficiency of the counts as pled.[7]

### 1. Sufficiency of the Causes of Action

#### a. Declaratory Judgment

Count I asserts a claim for declaratory judgment. The Count does not specify whether declaratory judgment is sought pursuant to 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, or the Florida Declaratory Judgment Act, Fla. Stat. § 86.011. However,

---

[7]The Court notes that the parties' pleadings do not discuss the sufficiency of Counts I, III, and IV and focus solely on the sufficiency of Count II.

the allegations contained in Count I recite the elements of declaratory judgment under Florida law, and the Court concludes that the Federal Declaratory Judgment Act has not been asserted in Count I.

The Florida Declaratory Judgment Act requires:

> a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1192-93 (Fla. 1995) (citing Martinez v. Scanlan, 582 So. 2d 1167, 1170 (Fla. 1991) (quoting May v. Holley, 59 So. 2d 636, 639 (Fla. 1952))).  "Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, [and] rest in the future."  Fla. Dep't of Ins. v. Guarantee Trust Life Ins. Co., 812 So. 2d 459, 460-61 (Fla. 1st DCA 2002) (citations and internal quotations omitted).  A declaration by the Court is discretionary.

<u>Travelers Ins. Co. v. Emery</u>, 579 So. 2d 798, 800 (Fla. 1st DCA 1991).

"A complaint for declaratory judgment should not be dismissed if the plaintiff established the existence of a justiciable controversy cognizable under the Declaratory Judgment Act, chapter 86, Florida Statutes (2007). . . . The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all." <u>Murphy v. Bay Colony Prop. Owners Ass'n</u>, 12 So. 3d 924 (Fla. 2d DCA 2009) (internal citation and quotation omitted).

The Amended Complaint states a plausible cause of action for declaratory judgment. Plaintiffs seek a declaratory judgment declaring that: (1) the relative share of the parties to the Oldcastle contract payments should be determined with each party's respective contributory value to Oldcastle and in accordance with fairness, substantial justice, and equity; (2) Mary Lynn is not entitled to share in the payments; (3) all future payments should be allocated in accordance with the Court's declaratory judgment; and (4) Mary Lynn should be ordered to repay or offset the overpayments she has already received. (Doc. #29, p. 10.) Plaintiffs allege that the payments under the agreements, as made to defendant, were "unauthorized, unfair, and inconsistent" (Doc. #29, ¶44), because defendant is not entitled to any part of the

payments and the payments were distributed prior to the parties
agreeing to the allocation of the funds.  Plaintiffs contend that
the amount received by Mary Lynn exceeds the amount she is
entitled.  Plaintiffs further assert that defendant's refusal to
return the alleged unauthorized payment creates an antagonistic
interest between the parties.  (Doc. #29, ¶¶ 40, 45.)  Finally,
plaintiffs claim that their rights to correct future payments
depend upon a correct application of the law and facts.  (Doc. #29,
¶48.)  The Court finds that, at this point in the litigation, the
plaintiffs have plausibly pled a cause of action for declaratory
judgment.

### b.  Breach of Fiduciary Duties

Count II asserts a claim for breach of fiduciary duties.  The
elements of a claim for breach of fiduciary duty are: (1) the
existence of a fiduciary duty; (2) the breach of that duty; and (3)
damage proximately caused by that breach.  Minotty v. Baudo, 42 So.
3d 824, 836 (4th DCA 2010) (citing Gracey v. Eaker, 837 So. 2d 348,
353 (Fla. 2002)).  A Florida court has summarized the contours of
a fiduciary relationship as follows:

> If a relation of trust and confidence exists between
> the parties (that is to say, where confidence is reposed
> by one party and a trust accepted by the other, or where
> confidence has been acquired and abused), that is
> sufficient as a predicate for relief. Fiduciary
> relationships may be implied in law and such
> relationships are premised upon the specific factual
> situation surrounding the transaction and the
> relationship of the parties. Courts have found a
> fiduciary relation implied in law when confidence is

> reposed by one party and a trust accepted by the other.
> To establish a fiduciary relationship, a party must
> allege some degree of dependency on one side and some
> degree of undertaking on the other side to advise,
> counsel and protect the weaker party.

Bingham v. Bingham, 11 So. 3d 374, 387 (Fla. 3d DCA 2009) (internal citations and quotations omitted). Fiduciary relationships are either expressly or impliedly created. Capital Bank v. MVB, Inc., 644 So. 2d 515, 518-19 (Fla. 3d DCA 1994). When a fiduciary relationship has not been created by an express agreement, the question of whether the relationship exists generally depends "upon the specific facts and circumstances surrounding the relationship of the parties in a transaction in which they are involved." Collins v. Countrywide Home Loans, 680 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010) (quoting Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 540 (Fla. 5th DCA 2003)).

The Complaint does not plead that a fiduciary relationship has been created amongst the parties by an express agreement. Rather, plaintiffs assert that an implied fiduciary duty exists. The Complaint contends that the right to payments under the Oldcastle contracts are dependent on each party's compliance with the terms and obligations set forth in the agreements. This interdependency, plaintiff's allege, results in a fiduciary duty between the parties. (Doc. #35, ¶35.)

The Court makes no determination as to whether the Oldcastle contracts created a fiduciary duty amongst the parties to fulfil

-14-

their obligations under the contract to ensure payment from Oldcastle.  Even assuming that a fiduciary duty arose by virtue of these agreements, the plaintiffs have not alleged that the defendant breached these duties in any way.  There are no allegations that Mary Lynn has failed to provide her goodwill to Oldcastle or that she has breached the non-compete agreement.  Rather, plaintiffs seem to suggest that the inter-dependency of the parties under the Oldcastle contracts gives rise to a fiduciary duty with respect to the parties' separate agreement to come to a decision on how to divide the Oldcastle contract proceeds.  There is simply no factual basis for this assertion.

Count II also alleges that Mary Lynn owes fiduciary duties to the plaintiffs "to act in good faith and to consent to allocation of Payments in accordance with the relative personal goodwill of the parties, the relative value of each individual party's non-competition agreement, fairness and equity and not in Mary Lynn's self interest alone to the detriment" of the defendants.  (Doc. #29, ¶54.)  It further alleges that Mary Lynn breached this duty "by insisting upon receiving a portion of the Payments that exceeds her fair share and disregards the relative goodwill of the parties, the relative value of each individual party's non-competition agreement, fairness and equity, including by so directing Manse." (Id. at ¶55.)

"In an arms length transaction . . . there is no duty imposed on either party to act for the benefit or protection of another party . . . ." <u>Metcalf v. Leedy, Wheeler & Co.</u>, 140 Fla. 149, 191 So. 690 (1939); <u>Lanz v. Resolution Trust Corp.</u>, 764 F.Supp. 176, 179 (S.D. Fla. 1991); <u>see also</u> <u>Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.</u>, 188 Fed. App'x 966, 969 (11th Cir. 2006) (holding no fiduciary relation existed in an arms length transaction between equal parties).  The Complaint presents only facts that demonstrate that the parties were engaged in an arms length transaction in which they agreed to allocate the contract proceeds in accordance with each party's respective value to Oldcastle prior to Oldcastle's first payment under both the Non-Compete and Personal Goodwill agreements.  Therefore, this cause of action is beyond the reach of Florida's long arm statute.

### c.  Quantum Meruit

To state a claim for quantum meruit under Florida law, a plaintiff must allege:

> (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

<u>Tooltrend, Inc. v. CMT Utensili, SRL</u>, 198 F.3d 802, 805 (11th Cir. 1999).  Florida law provides that a claim for quantum meruit cannot lie when an enforceable written contract governing the subject

matter of the dispute exists.  <u>See</u> <u>Sea Byte, Inc. v. Hudson Marine</u>
<u>Mgmt. Servs., Inc.</u>, 565 F.3d 1293, 1301 (11th Cir. 2009) (quoting
<u>Corn v. Greco</u>, 694 So. 2d 833, 834–35 (Fla. Dist. Ct. App.1997)).

    In contrast, a plaintiff may recover in quantum meruit where
the parties have a contract implied in fact, i.e., a contract
"based on a tacit promise, one that is inferred in whole or in part
from the parties' conduct, not solely from their words."  <u>Commerce</u>
<u>P'ship 8098 Ltd. P'ship v. Equity Contracting Co.</u>, 695 So. 2d 383,
386 (Fla. Dist. Ct. App. 1997).  In a contract implied in fact,

> the parties have in fact entered into an agreement but
> without "sufficient clarity, so a fact finder must
> examine and interpret the parties' conduct to give
> definition to their unspoken agreement in order to give
> the effect which the parties presumably would have agreed
> upon if, having in mind the possibility of the situation
> which has arisen, they had contracted expressly thereto.

<u>Tooltrend</u>, 198 F.3d at 806 (quoting <u>Commerce P'ship</u>, 695 So. 2d at
386 (internal quotation marks omitted).

    Count III fails to allege the specific elements of quantum
meruit and instead pleads only that the payment defendant has
received was in excess to the benefit to which she was entitled,
that she should be required to reimburse such excess, and that her
insistence that she is entitled to share in the payments in excess
of the value of her goodwill threatens future loss to the
plaintiffs.  (<u>See</u> <u>generally</u> Doc. #29, pp. 12-13.)  Thus, the Court
finds that the plaintiffs have not adequately pled a cause of

action for quantum meruit and this claim is beyond the reach of the Florida Long-Arm Statute.

### d.  Unjust Enrichment

In order to prevail under an unjust enrichment claim in Florida, plaintiffs must demonstrate facts, that if accepted as true, would establish: (1) that a benefit was conferred upon Mary Lynn; (2) that Mary Lynn either requested the benefit or voluntarily accepted it; and (3) that under the present circumstances, it would be inequitable for Mary Lynn to retain the benefit without paying for it." Eller Media Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 355 Fed. App'x 340, 341-42 (11th Cir. 2009) citing W.R. Townend Contracting, Inc. v. Jensen Civil Const. Inc., 728 So. 2d 297, 303 (Fla. 1st Dist. Ct. App. 1999).

Here, the Complaint alleges that Mary Lynn obtained the benefit of the plaintiffs' share of the proceeds.  Further, plaintiffs allege that Mary Lynn requested this benefit by requesting distribution of the money from Manse in excess of her share.  Plaintiffs also assert that it would be inequitable for Mary Lynn to retain this benefit.  At this stage in the litigation, the Court finds that plaintiffs have adequately pled a cause of action for unjust enrichment.

The Court therefore concludes that because two of the claims have been sufficiently pled, it is appropriate to apply the Florida Long-Arm Statute.

**2.  Fla. Stat. § 48.193(1)(a): Engaging in Business in Florida**

The Complaint alleges that Mary Lynn has "operated, conducted, engaged in, or carried on a business venture" in Florida.  (Doc. #29, ¶6.)  Alleging that defendant has engaged in the transaction of business in Florida is not the same as alleging the defendant is "engaging in . . . a business or business venture in this state." Fla. Stat. § 48.193(1)(a).  "In order to establish that a defendant is carrying on [a] business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (quotation marks omitted) (quoting Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)); see also Fraser, 594 F.3d at 848.  "[E]ngaging in a single act for profit can amount to a business venture," Labbee v. Harrington, 913 So. 2d 679, 683 (Fla. 3d DCA 2005)(citing Wm. E. Strasser Constr. v. Linn, 97 So. 2d 458, 460 (Fla. 1957)), but not every gainful transaction involving a Florida resident amounts to a business venture.  See Walack, 278 F. Supp. 2d at 1366.  Some factors the Court must consider include the "presence and operation of an office in Florida, [ ] the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients."

<u>Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.</u>, 421 F.3d at 1167 (internal citations omitted).

The Complaint alleges that Mary Lynn maintains an office or agency in Florida. (Doc. #29, ¶6.) In response, defendant submitted an affidavit in which she attests that she has never maintained an office in the State of Florida or an agency in the State of Florida. (Doc. #33-1, ¶¶ 8-9.) If a defendant submits affidavit evidence challenging jurisdiction that makes specific factual denials based on personal knowledge, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. <u>Mazer</u>, 556 F.3d at 1274. Plaintiffs have not refuted these assertions in Mary Lynn's affidavit. Thus, plaintiffs have not met their burden of establishing Mary Lynn is within the reach of Florida's Long-Arm Statute because she maintains an office or agency within the State.

Plaintiffs also assert that Mary Lynn is engaged in a business venture in Florida under both the Goodwill Agreement and the Non-Compete Agreement. Specifically, plaintiffs allege that the payments that Mary Lynn believes she is entitled to arise from the "continuing mutual obligations over the five year term" of the two contracts. (Doc. #35, p. 8.) Plaintiffs further contend that the Non-Compete Agreement is governed by Florida law and is subject to arbitration in Florida. Plaintiffs assert that "in light of the continuing obligations under the Agreement[s], the nature of the

obligations and the amounts of consideration involved, Mary Lynn is carrying on a 'business venture' in performing under the Agreement." (Id. at p. 9.)

The Court is not persuaded that Mary Lynn's continuing obligations under the contracts with Oldcastle subject her to the Florida Long-Arm Statute as a person who is engaged in the conduct of business in the State of Florida. Mary Lynn's continuing obligations under the two contracts are to provide the goodwill of her experience with Schwab Industries (which plaintiffs assert she has none) and to refrain from competing with Oldcastle in the State of Florida. Thus, her "continuing obligations" under the contract include to refrain from conducting business in Florida. As there are no allegations that Mary Lynn has violated the non-compete agreement, there are no allegations to suggest that Mary Lynn is engaged in a business venture in the State of Florida.

Plaintiffs contend that by virtue of negotiating with Oldcastle, which has offices in Florida, and entering into the Oldcastle contracts with Jerry, Donna, and David who are Florida residents, Mary Lynn has at the very least engaged in a "single act for profit" that has amounted to a business venture. However, the Court finds that the relevant factors to be considered in determining whether this act places Mary Lynn within the reach of the long arm statute weigh in favor of a finding that there is no personal jurisdiction over defendant. Mary Lynn was not present in

nor did she have offices in Florida.  There are no allegations that she possessed or maintained a license to do business in Florida. Even if the Court were to find that Oldcastle was Mary Lynn's "client", this company is the only Florida client alleged.  The only factor that weighs in plaintiffs' favor is the percentage of revenue from the Florida client.  Notwithstanding plaintiffs' allegations that defendant is not entitled to any of the money gleaned from the Oldcastle contracts, the money involved is substantial.  However, as this is the only factor that weighs in favor of a finding of personal jurisdiction, the Court finds that the plaintiffs have failed to establish that Mary Lynn is engaged in the conduct of business in the State of Florida.

### 2.  Fla. Stat. § 48.193(1)(b): Committing a Tortious Act

Section 48.193(1)(b) provides that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from [the defendant's activities] . . . [c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(b).  The only tort alleged by the plaintiffs is breach of fiduciary duty, which as the Court determined above, is an insufficiently pled cause of action.  The remaining causes of action are not considered a "tortious act" under Florida law.  See Lynkus Comms., Inc. v. WebMD Corp., 965 So. 2d 1161, 1164 (Fla. 2d DCA 2007)(quantum meruit); C.A. Seguros Catatumbo v. Herrera, 812 So. 2d 576, 578 (Fla. 3d DCA 2002)(declaratory judgment); and Gen.

Dev. Corp. v. John H. Gossett Const. Co., Inc., 370 So. 2d 380 (Fla. 2d DCA 1979)(unjust enrichment).  Accordingly, the Court finds this provision of the Florida Long-Arm Statute inapplicable.

### 3.  Fla. Stat. 685.101 and 685.102

Personal jurisdiction exists under §§ 685.101-102 regardless of Florida's Long-Arm Statute if a contract includes a forum selection clause designating Florida law as the governing law; includes a provision whereby the non-resident agrees to submit to the jurisdiction of the Florida courts; involves consideration in excess of $250,000; and involves at least one party that is incorporated or has a place of business in Florida.  Jetbroadband WV, LLC v. Mastec North America, Inc., 13 So. 3d 159, 161-62 (Fla. Dist. Ct. App. 2009).

Plaintiffs contend that the Court has personal jurisdiction over Mary Lynn because the value of the Oldcastle contracts clearly exceed $250,000, have a substantial relationship to Florida, plaintiffs reside in Florida, and Oldcastle has offices in Florida. In addition, plaintiffs contend that the Non-Compete Agreement provides that Florida law applies and the provisions there-in relating to arbitration result in consent to jurisdiction of the courts of Florida.

Defendants' reliance on the Goodwill Agreement and the Non-Compete Agreement are misplaced.[8]  Here, the controversy does not arise from these two contracts or any obligations agreed upon by the parties under the Oldcastle contracts.  Indeed, the Complaint alleges that the proper allocation of proceeds is explicitly absent from the Oldcastle contracts.  Rather, this controversy arises out of an alleged separate agreement between the parties related to how to allocate the proceeds derived from the Oldcastle contracts.  While the contracts between the parties and Oldcastle may have contained a choice of law clause, there are no allegations that the separate agreement between the parties relating to allocation contained such a choice of law clause.  Thus, plaintiffs have not met their burden of establishing that this Court has personal jurisdiction over Mary Lynn under either the Florida Long-Arm or choice of law statutes.  As a result, the Court need not determine whether exercising personal jurisdiction over Mary Lynn comports with Due Process.

**C.  Request for Discovery**

Lastly, plaintiffs request that if this Court finds that personal jurisdiction has not been established, that they be provided the opportunity to conduct jurisdictional discovery.

---

[8]The Court makes no determination whether either of these documents would confer specific personal jurisdiction.

"[A] court does not have discretion to grant or deny a request for jurisdictional discovery when jurisdictional facts are in dispute.  Rather, it is appropriate to speak in terms of a qualified 'right' to jurisdictional discovery when a court's jurisdiction is genuinely in dispute.  Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 730 n. 7 (11th Cir. 1982).  A "jurisdictional question is genuinely in dispute [when] the court cannot resolve the issue" without additional evidence.  Id.

The genuine dispute standard does not "permit[] a plaintiff to seek facts that would ultimately not support a showing [of] personal jurisdiction."  Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009).  For this reason, such facts "must be sufficiently **material** to warrant jurisdictional discovery."  Id. (emphasis added); See Laux v. Carnival Corp., 470 F. Supp. 2d 1379, 1383 (S.D. Fla. 2007).  Material facts are those that, under the substantive law at issue, are critical to the proper outcome of a given case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (discussing the genuine dispute of material fact standard in the pre- and post-trial context).  Where necessary, the Court may engage in a hypothetical analysis of jurisdiction to prove or disprove materiality of a fact.  See Bernardele, 608 F. Supp. 2d at 1321.

Plaintiffs' discovery request focuses on four interrogatories. These include: (1) "the basis for [defendant's] claim that she had personal goodwill to sell as regards Schwab Industries"; (2) defendant's "lease of trucks to Schwab Industries and the physical

locations and uses of those trucks by Schwab Industries"; (3) defendant's "negotiation of the [Personal Goodwill and Non-Compete] agreements and supply of information pertaining to the agreements"; and (4) "the scope of [defendant's] activity as an officer, director and former employee of Schwab Industries, including her communications and relationships with Schwab Industries' customers, vendors and other business partners, [and her involvement in the company's Florida subsidiaries]." (Doc. #35, p. 18.)  The Court finds that none of the requests would ultimately support a showing of personal jurisdiction over Mary Lynn.  The request is denied.

Accordingly, it is now

**ORDERED**:

1.  Defendant's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (Doc. #33) is **GRANTED** and the Amended Complaint (Doc. #29) is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

2.  Defendant's Motion to Strike Portions of Affidavit of David Schwab (Doc. #39) is **DENIED AS MOOT.**

3.  The Clerk shall enter judgment accordingly, terminate all pending motions, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of September, 2012.

_John E. Steele_
**JOHN E. STEELE**
United States District Judge

Copies:
Counsel of record